UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| MICHAEL SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 2:13-CV-173 |
| | ) |
| WAYNE ANDERSON, SHERIFF OF SULLIVAN | ) |
| COUNTY, Individually and in His Official Capacity, | ) |
| SULLIVAN COUNTY SHERIFF'S DEPUTY | ) |
| JEREMIAH LANE, Individually and in His Official | ) |
| Capacity, SULLIVAN COUNTY SHERIFF'S DEPUTY | ) |
| JEFF DOTSON, Individually and in His Official | ) |
| Capacity, COUNTY MAYOR STEVE GODSEY, | ) |
| Individually and in His Official Capacity, and | ) |
| SULLIVAN COUNTY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court to address the "Rule 12 Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted, and Motion for Summary Judgment" filed by the defendants. [Doc. 21]. Plaintiff has responded, [Doc. 31], and defendants have replied. [Doc. 34]. The plaintiff has also filed a "Cross-Motion for Summary Judgment." [Doc. 35]. The defendants have responded to that motion [Doc. 41], and plaintiff has replied. [Doc. 46]. For the reasons that follow, the Court will grant defendants' motion to dismiss Count I as to Sheriff Wayne Anderson, Deputy Jeff Dotson, County Mayor Steve Godsey, and Sullivan

County, grant Deputy Jeremiah Lane's motion for summary judgment on Count I, grant Sullivan County's motion for summary judgment on Count II, and dismiss this complaint.

## I. Background

On June 21, 2013, the plaintiff, represented by counsel, filed his complaint in this Court. [Doc. 1]. On December 12, 2014, defendants filed a Rule 12 motion to dismiss for failure to state a claim upon which relief can be granted and a Rule 56 motion for summary judgment. [Doc. 21]. Defendants filed, in support of their motions, the affidavit of defendant Jeremiah Lane [Doc. 21-2] with attached exhibits, copies of relevant pages from the discovery deposition of defendant Jeremiah Lane [Doc. 21-9], and copies of relevant pages from the discovery deposition of plaintiff Michael Sullivan [Doc. 21-10]. Defendants also filed a Statement of Material Facts [Doc. 23] and a brief in support of the Motion [Doc. 24].

On December 23, 2014, plaintiff's attorneys filed a motion to withdraw from further representation of the plaintiff. [Doc. 27]. Plaintiff acknowledged on the third page of the motion that he consented to the withdrawal. On January 9, 2015, the Court granted Plaintiff's attorneys' motion to withdraw. [Doc. 32].

On January 5, 2015, Plaintiff filed a document styled "Motion of Response to Summary Judgment". [Doc. 30]. Plaintiff states several times in this document that he is proceeding *pro se*. On January 5, 2015, Plaintiff also filed a document styled "Cross Summary Judgment Dismissal in Favor of Plaintiff/Plaintiff Requests Relief as Stated in Plaintiffs' [sic] Complaint". [Doc. 31].

## II. Standard of Review- Motion to Dismiss

"[T]he very purpose of *Federal Rule of Civil Procedure* 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery."

2

*Mitchell v. McNeil,* 487 F.3d 374, 379 (6th Cir.2007) (quoting *Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 566 (6th Cir.2003)).* To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim that is plausible on its face." *Bell Atlantic v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," but, where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" the complaint will not survive a Rule 12(b)(6) motion. *Id.* at 679. "In reviewing a dismissal under Rule 12(b)(6), all allegations in the complaint should be taken as true, and the complaint is to be construed liberally in favor of the party opposing the motion to dismiss." *Scott v. Ambani,* 577 F.3d 642, 646 (6th Cir.2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is [however] inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. The pleading standard of Rule 8 does not require detailed factual allegations but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Id.*

    **A. Analysis**

    In Count I of his complaint, the plaintiff alleges that the defendants violated his Fourth and Fourteenth Amendment rights as well as 42 U.S.C. §1983 and §1988; however, he makes no factual allegations in regard to defendants, Sheriff Wayne Anderson, Deputy Jeff Dotson,
3

County Mayor Steve Godsey, or Sullivan County, but instead relies on mere conclusory statements. At best, the plaintiff tries to bootstrap liability on these defendants by the following:

> 15. At all times mentioned in this Complaint, the Defendants, separately and in concert or conspiracy with each other, engaged in acts and omissions that constituted deprivations of the rights, privileges, and immunities of the Plaintiff, and while these acts were carried out under color of law, they had no justification or excuse in law, and were illegal, improper, and unrelated to any activity in which the Defendants and law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

The Sixth Circuit has articulated the standard governing a § 1983 civil conspiracy claim as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Heyne v. Metropolitan Nashville Public Schools,* 655 F.3d 556, 563 (6th Cir.2011) (*quoting Spadafore v. Gardner,* 330 F.3d 849, 854 (6th Cir.2003)). Moreover, "conspiracy claims must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* (quotations omitted). Even when construed liberally in favor of plaintiff, the complaint does not contain sufficient facts to establish the existence of a conspiracy. Plaintiff does not adequately plead the existence of an agreement or acts in furtherance of an agreement. The conspiracy allegation is plaintiff's lone allegation in regard to these four defendants which support plaintiff's contention that the

4

defendants violated his constitutional rights. This naked, unsupported, and conclusory claim does not pass muster. "[A] bare assertion of conspiracy will not suffice." *Twombly,* 550 U.S. at 556. The conspiracy claim, therefore, cannot survive the motion to dismiss and plaintiff's claims in Count I against Sheriff Wayne Anderson, Deputy Jeff Dotson, and County Mayor Steve Godsey, in their individual and official capacities, will be dismissed for failure to state a claim upon which relief can be granted. In addition, the plaintiff's claims against Sullivan County insofar as Count I is concerned are dismissed for failure to state a claim upon which relief can be granted.

### III. Standard of Review-Motion for Summary Judgment

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering such a motion, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Though the burden of establishing there is no genuine issue of material fact lies upon the moving party, *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the nonmoving party cannot rest upon mere allegations or denials in its pleadings, but must go beyond the pleadings and offer "specific facts" to show there is a genuine issue for trial. *Matsushita,* 475 U.S. at 586-87.

### A. Analysis

5

## 1. Undisputed Facts Submitted by the Defendants[1]

1. On June 24, 2012, Defendant Jeremiah Lane ("Lane"), a patrol shift leader (Sergeant) with the Sullivan County Sheriff's Office ("SCSO"), was contacted by Sullivan County E-911 and advised that law enforcement officers with the United States Forest Service ("Forest Service") had found narcotics and needed assistance from local law enforcement officers at the Rainbow Gathering at Flatwoods Road in the Cherokee National Forest in Sullivan County.

2. At the time of the call, no law enforcement officer with the SCSO was patrolling in the area of the Rainbow Gathering.

3. Lane responded to the request made by the Forest Service as he was the shift leader on duty and other patrol officers were busy.

4. It took approximately one hour for Lane to drive to the location where U.S. Forest Service officers had Plaintiff Michael Sullivan ("Sullivan") detained on Flatwoods Road in the Cherokee National Forest in Sullivan County for a seatbelt violation.

5. Lane did not speak to any of the Forest Service officers until he arrived on the scene.

6. Upon arrival, Lane was told by Forest Service officers at the scene that the following events had occurred prior to Lane's arrival:

    a. That Sullivan had been stopped by a Forest Service officer for a seat belt violation;

    b. That during the stop a Forest Service canine officer used a trained canine detection dog to sniff around Sullivan's vehicle and that the canine showed an alert indicating the presence of controlled substances in Plaintiff's vehicle; and

    c. That a search of the Plaintiff's vehicle had been conducted by Forest Service officers

---

[1] Although plaintiff purported to dispute some of these facts, he did not demonstrate that those facts were disputed by specific citation to the record as required by the Court's Scheduling Order. [Doc.18].

and substances seized and field tested by Forest Service officers, and that such substances tested positive for narcotics and controlled substances.

7. Upon Lane's arrival at the scene, the Forest Service officers gave Lane the items they had seized, field tested and concluded to be narcotics and controlled substances. The following were turned over to Lane by Forest Service officers:

a. A glass jar containing an off-white substance which Forest Service officers told Lane field tested positive for methamphetamine;

b. Two plastic bags containing a white powder substance which Forest Service officers told Lane had field tested positive for methamphetamine;

c. A plastic bag containing brown plant material which Forest Service officers told Lane that Sullivan had identified as peyote (a controlled substance);

d. A glass vial containing a brown liquid which Forest Service officers told Lane they had field tested positive for THC (marijuana); and

e. A pill box containing several pills, one of which Forest Service officers told Lane they had tested positive for barbiturate.

8. After being advised by Forest Service officers of the canine sniff, the search, the seizure, the results of the field tests, and provided with the seized substances, Lane conducted his own field tests. Lane conducted three separate tests with three different test kits, one on the off-white substance in the glass jar and one on the white powder in each of the two plastic bags, all three of which confirmed a positive test for methamphetamine. This confirmed what Lane had been told by the Forest Service officers and Lane saw no need to do any additional tests.

9. Lane based his probable cause for the arrest of Plaintiff on the fact that Forest Service officers told him their canine showed an alert on Plaintiff's vehicle, the drug test results communicated him by Forest Service officers, and the results of his own field drug tests.

10. On June 25, 2012, Sullivan County General Sessions Judge W. A. Watson determined there was probable cause to believe Sullivan committed the crimes of: 1) possession of Schedule I drugs (peyote), 2) possession of Schedule II drugs (methamphetamine), and 3) possession of Schedule VI drugs (THC).

11. On July 10, 2012, a preliminary hearing was conducted by a Sullivan County General Sessions judge who found probable cause to bind the criminal charges against Sullivan over to the Sullivan County Grand Jury.

12. Plaintiff's vehicle was seized pursuant to a state statute providing for the seizure of vehicles used to transport drugs in violation of state law.

13. On June 27, 2012, Sullivan County General Sessions Judge W. A. Watson determined there was probable cause to seize Plaintiff's vehicle.

14. Lane has been employed by the SCSO for fourteen years and was approximately 21 years old when first employed there.

15. After high school, Lane attended a local university for two years where he took criminal justice classes and classes geared toward law enforcement.

16. While attending college, Lane worked for two years as a security guard at a local mall.

17. In 2004 Lane attended a 459-hour "Basic Law Enforcement Officer Training" that included training on probable cause, arrest, and search and seizure. Every year since being employed by the SCSO, Lane has received 40 hours of in-service training which included

8

Case 2:13-cv-00173-JRG-MCLC   Document 50   Filed 06/29/15   Page 8 of 14   PageID #: 760

multiple areas of legal and law enforcement topics including probable cause, arrest, and search and seizure. While employed with the SCSO, Lane has attended in excess of fifty classes on various aspects of law enforcement including, for example, first-line supervision, mid-level management, police executive management, internal affairs, basic SWAT school, repelling school, traffic crash investigation, DUI school, criminal investigations, and became a shooting instructor, a "less-than-lethal" instructor, and a breaching instructor.

18. Lane attended a two-week class in 2006 on basic narcotics investigation, a class on advanced narcotics investigation, and a class on domestic drug interdiction.

19. Lane attended meth lab certification classes in 2006-2007 and was certified in 2006-2008 to take down and deconstruct meth labs.

20. From December 2005 to April 2007 Lane worked in vice as a narcotics officer with the SCSO where he investigated crimes involving the distribution, sale, production, and promotion of narcotics. Other than the time Lane worked in vice, he worked as a patrol officer from May 2004 to April 2013.

21. Lane was familiar with the use of field drug test kits though previous work as a narcotics officer with the SCSO.

22. Lane had used field drug test kits approximately 25 times during his work as an officer with the SCSO, never had a field test indicate a false positive, and the test results were used to make arrests, obtain search warrants, and obtain convictions.

23. During Lane's work as a patrol officer, he has worked five cases involving the possession of methamphetamine and three cases involving meth labs, all of which resulted in convictions.

24. Lane did not have any field drug test kits because patrol officers are not issued field drug test kits.

25. Lane received field drug test kits for methamphetamine from Forest Service officers.

26. Field drug test kits come with operating instructions. Lane referred to the instructions and also received guidance from Forest Service officers when he used the test kits on the substances seized from Plaintiff by Forest Service officers.

27. Lane used a separate set of gloves and a separate spoon (used to acquire substance for placement into the test bag) during each of the field tests he performed.

28. After the arrest of Sullivan by Lane, Sullivan asked Lane to retrieve some prescription medication from his vehicle and Lane did retrieve the medication for Plaintiff; Plaintiff was not charged with any crimes because of the medication.

29. All crimes Plaintiff was charged with were based upon the items turned over to Lane by Forest Service officers.

30. Plaintiff never saw Sheriff Wayne Anderson, Mayor Steve Godsey or Jeff Dotson at the scene of his detention and arrest.

31. Defendant Jeff Dotson was not at the scene of Plaintiff's detention and arrest.

32. Lane was the only Sullivan County officer Sullivan saw at the scene of his detention and arrest.

33. On December 17, 2012, an "Order of Compromise and Settlement" was entered and Plaintiff's vehicle was returned to him. Plaintiff released the Tennessee Department of Safety from any liability for the seizure.

10

34. On May 2, 2013, an Agreed Order was entered in Sullivan County Criminal Court providing for the return of any and all property seized as a result of the arrest of Plaintiff on June 24, 2012.

### B. Analysis- Count I- Sullivan County Deputy Jeremiah Lane

The plaintiff's §1983 claim is that Lane wrongfully arrested him for drug offenses based on the false positive drug results obtained using an out of date drug field test kit.[2] "In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002). "A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir.2000). Furthermore, "in obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." *Id*. The *Gardenhire* court stated that a bare allegation of criminal wrongdoing, although possibly justifying a brief investigatory detention, was insufficient by itself to establish probable cause that the suspect had committed a crime. *Id*. at 317. Police officers may not "make hasty, unsubstantiated arrests with impunity," nor "simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone." *Ahlers v. Schebil*, 188 F.3d 365, 371–72 (6th Cir.1999).

As the Sixth Circuit has previously explained, a determination of whether probable cause existed requires the Court to examine the totality of the circumstances, and the Court may

---

[2] Although the plaintiff originally accused Lane of violating his constitutional rights by using a drug dog's alert for probable cause to search the vehicle, by searching his vehicle, and by detaining him until he was transported to the Sullivan County Jail, all these were the actions of Forest Service officers and not of Lane. The plaintiff contends that officers used expired NIK drug kits to test the substances found in his car; however, those drug kits belonged to the Forest Service officers and not Lane. [Doc. 23].

"consider only the information possessed by the arresting officer at the time of the arrest." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir.2008). "A finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial; all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Id*.

In the case at bar, when Lane arrived at the scene, he was advised by Forest Service officers that they that stopped plaintiff for a seat belt violation and had conducted a canine sniff around plaintiff's vehicle, during which the canine alerted to drugs. They also advised Lane that Forest Service officers had searched plaintiff's vehicle, seized his property, field tested what were thought to be drugs, and obtained positive results for illegal drugs. Lane re-tested the three substances believed to be methamphetamine with three different test kits provided by Forest Service officers and again got positive results. There is no proof that Lane knew that the drug field test kits were expired NIK drug tests kits or that the results they produced were false positives. Based upon the totality of the circumstances, including the information Lane received from Forest Service officers, as well as Lane's additional drug field tests, Lane had ample probable cause to arrest the plaintiff at the time of the arrest. Therefore, the motion for summary judgment filed by Deputy Lane will be granted.

### C. Analysis- Count II- Sullivan County

In Count II of the complaint, the plaintiff alleges that Sullivan County failed to properly train and supervise law enforcement personnel in violation of 42 U.S.C. §1983, §1986, and §1988. To succeed on this claim, the plaintiff must prove that Sullivan County was deliberately indifferent to the rights of citizens who came into contact with deputies. *Stemler v. City of Florence,* 126 F.3d 856, 865 (6th Cir.1997). The plaintiff must show prior instances of

unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. *See id.; Berry v. City of Detroit,* 25 F.3d 1342, 1354 (6th Cir.1994) (citing *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Stemler,* 126 F.3d at 865 (citation omitted).

In this case, the evidence indicates that Lane attended the 459-hour "Basic Law Enforcement Officer Training" which included training on probable cause, arrest, and search and seizure. Lane has received 40 hours of in-service training every year during his employment with the SCSO which includes multiple areas of legal and law enforcement topics including probable cause, arrest, and search and seizure. He has attended in excess of fifty classes on various aspects of law enforcement including, for example, first-line supervision, mid-level management, police executive management, internal affairs, basic SWAT school, repelling school, traffic crash investigation, DUI school, criminal investigations, and became a shooting instructor, a "less-than-lethal" instructor, and a breaching instructor. Lane attended a two week class in 2006 on basis narcotics investigation, attended a class on advanced narcotics investigation, attended a class on domestic drug interdiction, attended meth lab certification classes in 2006-2007, and was certified in 2006-2008 to take down and deconstruct meth labs.

Despite his arguments to the contrary, [Doc. 31, pp. 27 and 28], the plaintiff has failed to produce sufficient evidence that the officers' training programs were inadequate. In addition, the plaintiff has not shown that the County knew of prior unconstitutional actions by its employees and failed to respond. Accordingly, summary judgment will be granted for Sullivan County on the failure to train and supervise claim.

### D. State Law Claims-Count III

In addition to his 42 U.S.C. § 1983 action, the plaintiff has brought several state-law claims. These include claims for assault, battery, false arrest, false imprisonment, trespass to chattels, and due process violations of the Tennessee Constitution and state law. [Doc. 1]. Under 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. In the Sixth Circuit, the policy is that "[i]f federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir.2009) (quoting *Wojnicz v. Davis*, 80 Fed.Appx. 382, 384-85 (6th Cir.2003)). Because the court dismissed plaintiff's federal claims prior to trial, the court declines to exercise supplemental jurisdiction over his state-law claims. Accordingly, plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE.**

### IV. Conclusion

Based upon the foregoing, it is hereby **ORDERED** that the defendants' motion to dismiss Count I as to Sheriff Wayne Anderson, Deputy Jeff Dotson, and County Mayor Steve Godsey, in their individual and official capacities, is **GRANTED**; the defendants' motion to dismiss Count I as to Sullivan County is **GRANTED;** the defendants' motion for summary judgment on Count I as to Deputy Jeremiah Lane is **GRANTED;** the motion for summary judgment on Count II as to Sullivan County is **GRANTED**, [Doc. 21], and Plaintiff's state law claims (Count III) are DISMISSED WITHOUT PREJUDICE. The plaintiff's "Cross-Motion for Summary Judgment" is **DENIED** as **MOOT**. [Doc. 35].

Plaintiff's complaint, therefore, will be DISMISSED.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE